UNITED STATES BANKRUPTCY COURT
Southern District of Texas
ENTERED
03/27/2013

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 10-33878** |
| **R&K FABRICATING, INC.** | § | **CHAPTER 11** |
| **and** | § | |
| **RICARDO GONZALEZ** | § | |
| | § | |
| **Debtor(s).** | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **MICHAEL J. DURRSCHMIDT** | § | |
| | § | |
| **Plaintiff(s),** | § | |
| | § | |
| **vs.** | § | **ADVERSARY NO. 12-03177** |
| | § | |
| **FROST NATIONAL BANK, *et al*** | § | |
| | § | |
| **Defendant(s).** | § | |

**MEMORANDUM OPINION**

For the reasons set forth below, the Court grants, in part, and denies, in part Cross-Defendant, Louis F. "Bud" Goza's Motion to Dismiss Cross-Plaintiff, Tokio Marine & Nichido Fire Insurance's ("Tokio"), First Amended Cross-Claim (ECF No. 159).

Tokio filed its First Amended Cross-Claim and Alternative Motion to Extend Amendment Deadline on January 24, 2013. ECF No. 151. In its First Amended Cross-Claim, Tokio asserts causes of action against Goza for (1) fraud; (2) negligence, negligent misrepresentation & gross negligence; (3) conversion; (4) violations of Texas Theft Liability Act; (5) conspiracy to defraud; and (6) tortious interference with contract.

Tokio's fraud claim against Goza should be dismissed in part. Tokio has not pled sufficient facts to show that Goza participated in the filing of the allegedly fraudulent insurance claim. Tokio has however pled sufficient facts to show that Goza knew of the fraudulent claim

shortly after its filing and failed to remedy the fraud. The conspiracy to defraud claim will not be dismissed, for the same reason. The remainder of Tokio's claims against Goza should be dismissed for failure to state a claim.

**Background**

This lawsuit concerns a proof of claim filed in Debtor R&K Fabricating, Inc.'s ("R&K) chapter 11 bankruptcy case (Case No. 10-33878). The proof of claim is based on a default judgment that Tokio obtained against R&K in a state court action in the amount of $311,344.68. The default judgment relates to six forklifts that were claimed to be damaged while in R&K's possession during Hurricane Ike ("Forklifts"). The Trustee alleges that the default judgment is based on a fraudulent claim filed by Universal Forklift Supply, LLC, ("UFS"), the company that leased the Forklifts to R&K. The Trustee brought suit against UFS; its principals Wyendell Steve Evans and Louis F. "Bud" Goza; and Tokio seeking a declaratory judgment that (1) the judgment lien held by Tokio and UFS was an avoidable preference under 11 U.S.C. § 547; (2) the disallowance of Tokio and UFS' claims against the estate; and (3) a breach of contract and fraud judgment against UFS, Evans and Goza. ECF No. 128 at 1. Tokio subsequently filed a cross-claim against UFS for breach of contract and against UFS, Evans, and Goza for fraud. ECF No. 128 at 1.

The Court previously issued a Memorandum Opinion and Report and Recommendation on November 29, 2012, denying UFS and Evans' motions to dismiss; and granting Goza's motions to dismiss for failure to state a claim, subject to repleading. ECF No. 128 at 2. The background of the case is set forth in ECF No. 128 and will not be repeated here, but is incorporated herein by reference.

In an Order issued on the same date, the Court recommended that the District Court temporarily withdraw the reference in Adversary Proceeding No. 12-03177. ECF No. 129 at 2. Following withdrawal of the reference the Court, among other things, recommended that the District Court grant Tokio 21 days to amend its complaint against Goza. ECF No. 129 at 2. The Court also recommended that the District Court again refer the Adversary Proceeding to the Bankruptcy Court until the Adversary is ready for trial. The District Court adopted the November 29, 2012 Report and Recommendation on January 3, 2013. ECF No. 143.

Tokio filed its First Amended Cross-Claim and Alternative Motion to Extend Amendment Deadline on January 24, 2013. ECF No. 151. In its First Amended Cross-Claim, Tokio asserts causes of action against Goza for (1) fraud; (2) negligence, negligent misrepresentation & gross negligence; (3) conversion; (4) violations of Texas Theft Liability Act; (5) conspiracy to defraud; and (6) tortious interference with contract.

On the same date, Tokio filed its Motion for Clarification of Report & Recommendation and Memorandum Opinion of 11/29/2012 & Order of 1/3/2013 Adopting Memorandum & Recommendation (ECF No. 152), seeking clarification as to whether the Court had already ordered the dismissal of Goza or whether Tokio was in fact granted leave to amend its complaint. ECF No. 152 at 3.

Goza filed his Motion to Dismiss Tokio's First Amended Cross-Claim on February 20, 2013. ECF No. 159. Tokio filed its response on March 6, 2013. ECF No. 167. Goza filed his reply on March 12, 2013. ECF No. 168.

## Analysis

### A. Dismissal Standard

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. Fed. R. Civ. P. 9(b). *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of

her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

**B. Fraud**

Tokio amended its complaint to allege additional facts to meet the standard of Rule 9(b).

***a. Who***

Tokio provides additional facts to evidence that Goza participated in the fraud against Tokio.

Tokio first alleges facts to show that Goza was involved in the day-to-day operations of UFS and was not merely a passive investor.

Tokio relies on deposition testimony of UFS's Service Manager, Joe Robinson who testified that Goza came into the picture when UFS first began operations, and was at the UFS premises almost daily. ECF No. 151 at 15. Robinson also discussed discord between Goza and UFS's bookkeeper related to the manner in which booking was done. ECF No. 151 at 17. Robinson described confrontations between Robinson and Goza regarding Robinson's ability to timely service forklifts. ECF No. 151 at 17.

Tokio also relies on testimony of Evans who testified regarding disagreements he had with Goza because Goza "felt more and more like he ought to be the operator" and not just an investor. ECF No. 151 at 15-16. Evans testified that he met with Goza weekly—sometimes

twice, three times a week or every day. ECF No. 151 at 16. Evans also testified that he left UFS because Goza was "getting older and wanted to sell his interests to [Evans]." ECF No. 151 at 16. Tokio relies on this to infer that Goza was more than just a passive investor but had substantial involvement in UFS operations.

The deposition of former employee James Knight describes specific representations by Evans and Goza as to how Knight's commissions were generated, and that UFS' leases were financed through banks owned by Goza or banks with which he was affiliated. ECF No. 151 at 16. Knight's testimony described Goza's requirement that the financial business of UFS be documented "down to the penny." ECF No. 151 at 16. Tokio relies on this testimony to show that Goza was knowledgeable and closely involved with the finances of UFS.

Knight's testimony also described confrontation between Knight and Goza regarding the legitimacy of Knight's sales deals—specifically with Goza explaining to Knight that Goza wanted to put deals that were not yet completed on the UFS books for their bank and line of credit. ECF No. 151 at 18.

***b. What, When & Where***

The "what," "when," and "where" relate to the repossession of the forklifts, and the filing of the allegedly fraudulent insurance claim. The facts related to these factors are set forth in the Court's November 29, 2012 Memorandum Opinion and Report & Recommendation, (ECF No. 128 at 3-4), and are incorporated herein by reference.

***c. How***

Tokio's independent adjustor produced its record of the claim filed by UFS for the loss of the forklifts. ECF No. 151 at 23. The adjustor's record reflects that on October 8, 2008, the adjustor met with Evans and UFS' landlord. ECF No. 151 at 23. In his deposition, Evans

testified that Goza was UFS' landlord. ECF No. 151 at 23. Additionally Evans testified that he was sure he discussed the insurance claim with Goza, and would be surprised to hear that Goza testified that he knew nothing about the insurance claim. ECF No. 151 at 23. Evans further testified that Goza would be the employee with knowledge of the income generated from the forklifts after January 31, 2009, and whether they were returned to UFS' sales/leasing fleet. ECF No. 151 at 24.

Tokio relies on these facts as evidence that Goza knew the forklifts were not a total loss as reported to Tokio, yet did not report the mistaken insurance claim, and accepted the proceeds of the claim after returning the forklifts to the sales/leasing fleet.

***d. Why***

Tokio provides facts that tend to show that Goza has a significant personal stake in UFS, and has personal liability for many of UFS's debts, providing a motive for commission of the alleged fraud.

Goza's deposition testimony indicates that he personally loaned UFS $3.9 million dollars on top of his initial investment of $100,000.00, none of which has been repaid. ECF No. 151 at 24. Goza guaranteed all of UFS' obligations to its lenders, pledging his personal assets as additional collateral. ECF No. 151 at 24-25. Goza testified that the cash infusions he made to UFS were prompted by the need for cash flow or to pay down bank loans. ECF No. 151 at 25.

Goza admitted that the payment of the insurance proceeds was booked as a sale of used equipment rather than insurance proceeds. ECF No. 151 at 26. Goza admitted that if the insurance proceeds (received in February, 2009) had not been back-dated and booked as proceeds from a sale of used equipment in 2008, UFS would have reported a loss for 2008.

ECF No. 151 at 26. Goza further admitted that reporting a loss for 2008 would result in a default on various loans from UFS' bankers.[1] ECF No. 151 at 26. Goza has also admitted that he is affiliated with such banks. ECF No. 151 at 26.

Knight's deposition testimony indicates that Evans' told Knight that the reason the allegedly fraudulent insurance claim was filed was so that UFS could pay off the bank. ECF No. 151 at 27. Tokio alleges that Goza sat on the Board of Directors of such bank and asserts that this fact evidences both Goza's knowledge of the insurance claim and his benefit from the claim. ECF No. 151 at 27.

The facts alleged are not sufficient to withstand dismissal regarding Goza's participation in the filing of the fraudulent claim. Tokio has pled no facts to show that Goza actually acted in filing the claim. Tokio has alleged sufficient facts to support a claim that Goza knew about the filing of the insurance claim, and failed to remedy it at or near the time the claim was filed. Therefore Tokio has pled a claim for fraud beginning at or near the time of filing of the claim for Goza's knowledge of the claim and acceptance of funds on behalf of UFS which he knew or should have known to be wrongfully acquired.

**C. Statute of Limitations**

Goza asserts that Tokio's negligence, negligent misrepresentation, gross negligence, conversion, Texas Theft Liability Act and tortious interference claims are all barred by the statute of limitations. ECF No. 159 at 21-31.

Accrual of a cause of action is deferred in cases of fraud or fraudulent concealment. *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). The limitations period begins when the fraud is discovered

[1] These allegations may amount to a fraud on the banks. If Goza knowingly submitted false financial information to the banks (banks of which Goza was a board member), it may violate federal law. Consistent with the Court's mandatory reporting duties, the Court will refer this matter to the United States Attorney and to the Federal Bureau of Investigation to determine if a crime may have been committed by Goza.

or should have been discovered by reasonable diligence. *Computer Associates Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). Determining when the fraud was discovered or should have been discovered with reasonable diligence is a question of fact. *Walker v. Anderson*, 232 S.W.3d 899, 909 (Tex. App.—Dallas 2007).

Therefore Tokio's claims will not be dismissed based on a statute of limitation's defense.

**D. Negligence, Negligent Misrepresentation, Gross Negligence**

***a. Negligence***

Under Texas law, the pure economic loss rule forecloses Tokio's negligence claims. The pure economic loss rule prevents pursuit of a negligence claim predicated on a duty created under a contract to which the plaintiff is a party when tort damages are sought for an injury consisting only of economic loss to the subject of the contract. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011).

***b. Negligent Misrepresentation***

The elements of a negligent misrepresentation cause of action are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *AKB Hendrick, LP v. Musgrave Enter., Inc.*, 380 S.W.3d 221, 237 (Tex. App.—Dallas 2012).

Tokio has not pled facts sufficient to support a claim for negligent misrepresentation. As stated *supra*, Tokio has not alleged sufficient facts to support that Goza was responsible for the filing of the allegedly fraudulent claim. Additionally, there are no facts alleging that Goza

supplied false information to Tokio for the guidance in its business or that Goza was negligent in obtaining or communicating information to Tokio.

***c. Gross Negligence***

Tokio's gross negligence claim suffers from the same flaw as its negligence claim. The pure economic loss rule also prevents recovery for gross negligence in the breach of a contract. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d. 617, 618 (Tex. 1986). Therefore Tokio's gross negligence claim is dismissed.

**E. Conversion**

Under Texas law the elements of a conversion cause of action are that: (1) plaintiff owned, had legal possession of, or was entitled to possession of the property*;* (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property. *Bailey v. Gallagher et al.*, 348 S.W.3d 322, 328 (Tex. App.—Dallas 2011).

Tokio's claim for conversion should be dismissed. Tokio pleads no facts showing that Goza personally exercised dominion and control over the insurance proceeds or that Tokio made a demand for the property.

**F. Texas Theft Liability Act**

The Texas Theft Liability Act ("TTLA") provides that a person who commits theft is liable for the damages resulting from the theft. Tex. Civ. Prac. & Rem. Code § 134.003. Theft means unlawfully appropriating property or unlawfully obtaining services as described by Texas Penal Code §§ 31.03-31.07 and 31.11-31.14. Tex. Civ. Prac. & Rem. Code § 134.002.

The only section of the Texas Penal Code that might apply in this instance is § 31.03, which provides that a person commits an offense of theft if he unlawfully appropriates property with intent to deprive the owner of property. § 31.03(b) provides in pertinent part that appropriation of property is unlawful if: (1) it is without the owner's effective consent; or (2) it is stolen and the actor appropriates the property knowing it was stolen by another.

Tokio has not pled facts to support a claim under TTLA. Tokio knowingly provided the funds to UFS. There is no evidence that Goza took the funds from UFS and used them for personal purposes. Tokio's TTLA claim is dismissed.

**G. Conspiracy to Defraud**

A conspiracy to defraud involves (1) two or more persons; (2) with a common purpose; (3) undertaking a common action to defraud; (4) where each person possesses intent to defraud; and (5) each person understands that the other conspirators share the common purpose. *Bayou Terrace Investment Corp. et al. v. Lyles*, 881 S.W. 2d 810, 815 (Tex. App.—Hous. [1st Dist.] 1994).

Tokio has pled sufficient facts to withstand dismissal on its conspiracy to defraud claim. Tokio has pled facts to show that from the time Goza learned of the insurance claim, he acted in concert with UFS and Evans to defraud Tokio. There is a common purpose alleged for the fraud–to show a profit for UFS for 2008, thereby preventing default on loans that both Goza and Evans had guaranteed. Every party to the alleged fraud is alleged to have concealed from Tokio its knowledge of the fraudulent claim. Lastly, Tokio has shown that the co-conspirators understood that they shared a common purpose. Evans testified that Goza knew something about the insurance claim because they had discussed it. There are also facts showing that Goza and

Evans frequently discussed the affairs of UFS. Through such discussion all parties would understand whether they were acting with a common purpose.

**H. Tortious Interference with Contract**

The elements of a cause of action for tortious interference with contract are: (1) existence of a contract that is subject to interference, (2) a willful and intentional act of interference with the contract; (3) which proximately causes claimant's injury; and (4) causes actual damages or loss. *AKB Hendrick*, 380 S.W.3d at 236. To preserve the logically necessary rule that a party cannot tortiously interfere with its own contract when a defendant is both a corporate agent and the third party that allegedly induced the corporations breach, the alleged act of interference must be performed in furtherance of the agent's personal interests. *Holloway v. Skinner*, 898 S.W.2d 793, 796 (Tex. 1995). A plaintiff must show that the defendant acted so contrary to the corporation's best interests that his actions could only have been motivated by personal interests. *Id*.

Tokio has not pled facts sufficient to withstand dismissal on its tortious interference with contract claim. While Tokio has pled facts showing that Goza was acting in his own interest, it has also pled facts to show why Goza was acting in the interest of UFS as its agent. Tokio has not shown that Goza could have only been motivated by personal interests, but also suggests motivation beneficial to UFS. Therefore this claim is dismissed.

**Conclusion**

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED **March 27, 2013.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE